The Honorable. The United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is United States v. Douglas Gordon, Appeal No. 21-1023. Attorney Smith, please introduce yourself for the record and proceed with your argument. Thank you. Attorney Steve Smith representing Appellant Doug Gordon. May it please the Court, Doug Gordon is a small business owner. He sold and rented business movies in the Bangor Brewery area. As part of his business, he reproduced and sold obscure out-of-print movies. He underwent a particular process, which is in the record, but essentially he would identify movies which were not available by DVD, not currently in print, not currently for sale. He would then undertake a certain process to determine whether the copyright owner could be identified. He then filtered that process through his admittedly imperfect legal understanding of two doctrines, the Fair Use Doctrine and the Orphan Works Doctrine. It is not my purpose today to argue that he applied either of those doctrines correctly. For instance, the Orphan Works Doctrine, as to my knowledge, has never been recognized by any court, but it has to be recognized that there is substantial discussion of it in the academic and legal literature. With respect to the Fair Use Doctrine, generally speaking, there is a four-step analysis. Mr. Gordon undertook in his lay understanding to parse what he was doing through that analysis. Again, I don't want to argue that he did so correctly. Simply that he did so, and he did so as he testified with the idea that he did not want to violate copyright law. He simply wanted to comply with it as he understood it. Now, the government has convicted him on this charge, and the jury obviously found that he did so. But the conviction should not stand, because the government has to prove the element of intent, specifically they have to prove that he willfully, meaning voluntarily, intended a violation of a known legal duty. Mr. Gordon did not do this. As I just described, he undertook a process. The government argues, I think, or will argue, that Mr. Gordon should have known that he was violating a legal duty when he began receiving search warrants and things of this nature, and became aware that the government was interested in him through the application of target letters and so on. I think the record is fairly clear that Mr. Gordon did know about search warrants and target letters and so on, but this only really underscores his strongly held belief that he was doing the right thing, as he saw it, in attempting to comply with U.S. copyright law. Mr. Smith, what is our standard of review on this issue? Your Honor, with respect to the standard of review, because there was not a sufficiency challenge below, I believe the standard of review is clear and gross injustice. And so that's a pretty tough road to hoe with this type of argument. It is, Your Honor, but intent is one of those fundamental things that applies to the criminal law, and it's so foundational to the criminal justice system that for this convention to stand on these facts, I believe would meet that standard. Does that answer the court's question? Yes, thank you. Thank you. So moving on to the sentencing issue, at sentencing the government presented some $650,000 worth of alleged loss. This is based on some 200 titles which the government says were infringed. The government, however, only presented some 90 titles that it obtained the copyright certificates for. At trial, I don't have the exact count, but there was substantially less than cases of that presented in evidence. Now, the government relies on, the court relied upon the idea that you could form a reasonable inference from the evidence presented. And I think the way we see this most often, the one I'm most familiar with, is in, for example, a drug case, where the government is not present at every transaction, and the government doesn't have a scale or a money counter every time a set of drug dealers does their business. And so the courts have allowed, and properly so, a reasonable inference to be formed based on the broader scope of the evidence. However, this is not that case.  And it simply chose not to do so. On page 20 of the government's brief, it states that the agent thresher, the lead investigator of the case, did not obtain the additional 110 certificates because of the quote-unquote cost. Now, the record is obscure as to whether that cost was the cost of the agent's time, the cost of reproduction, or the cost of certification. But in any event, it was clearly within the government's capabilities to obtain the 110 records because it had already obtained 90 of them. And for the government and the court to sentence my client, it should have been on the evidence, and it should have been on knowable information. And I would suggest to the court this is a rare circumstance when the court should not apply a reasonable inference standard to the standard of proof in sentencing issues, and should simply state that when the government can reasonably obtain the information it seeks to have a court-imposed sentence on, that the government should be required to do it. And it did not do so here. Mr. Smith, Attorney Smith, you're coming up with a new rule. You're asking us to abandon the reasonable inference rule. But the government reasonably relied on that rule in choosing not to incur the additional cost. So what's your response to that? Again, in my argument I tried to narrow the scope of where I think the government should be required to do this. I think, and I am asking, I think, the court to develop a new rule. And the new rule is that I would propose for the court Four minutes remaining, four minutes. is that where the government has information readily available to it and easily obtained, in fact, the U.S. Copyright Office is at arm with the federal government. That the government should be required to do that, and in the case of the drug case that I presented, that the government is excused from that. Attorney Smith, the reasonable inference rule, which allows trial judges to draw inferences to support the amount of the loss, is of longstanding and applies well outside of drug cases. So let's think about the implications of your argument. I don't know what you mean by easily available. There were additional steps that would have had to be taken. The government says it would have cost, doesn't, according to you, specify whether that is out-of-pocket costs or costs of the agent. What is wrong with permitting the government to continue to rely on this rule? What's your societal argument that an exception should be carved out of the rule? Your Honor, I would actually suggest that the rule of leniency generally... No, no, no, no, no, no, no. Let's abandon the rule of leniency. It has nothing to do with this situation. Now, what is your argument? My argument, Your Honor, is that the government has the burden of proof on all circumstances. And the burden of proof is there because the law should favor criminal defendants, even at the sentencing phase. And I think the government... I would suggest that if we examine the roots of the reasonable inference rule, that it's really an exception to the general rule that's really sort of swallowed the rule itself. And I would suggest to the court that the basic rule should be the government presents its proof, and only when the government cannot reasonably obtain the information, then the reasonable inference rule should apply. Okay, thank you. Do you have anything else? I have nothing further subject to your questions. Thank you. We'll hear from your opponent. Thank you, Attorney Smith. At this time, mute your audio and video. Attorney Block, if you would unmute your audio and video and introduce yourself on the record to begin. Good morning, Your Honors. Benjamin Block on behalf of the United States. I'd like to begin by addressing the clear and gross injustice standard that applies to Mr. Gordon's challenge to the sufficiency of the evidence with respect to his willful violation of copyright law. That standard requires that the evidence be plainly insufficient to support the conviction. And here there is no reasonable argument that the evidence fails to meet that standard. Mr. Gordon ignored complaints from multiple copyright holders that his actions violated the law, ignored a civil investigative demand letter from the Maine Attorney General's Office regarding potential copyright violations and consumer fraud. He continued the scheme after execution of two separate search warrants at his home that were aimed at seizing evidence of copyright infringement. He continued the scheme after receiving a target letter from the United States Attorney's Office informing him that he was under investigation for criminal copyright infringement. He started a new website to continue the scheme after a website was shut down by court order. He told a former co-conspirator that he was moving his production operations to a third-party company in Nevada in order to prevent the federal government from seizing additional evidence of his wrongdoing. I could go on, but I think that that small summary of the evidence in this case more than meets the standard to allow a jury to find that he willfully violated copyright law. Attorney Block, your opponent said that he only copied videos that were no longer current. They were off the market. No one was selling them. I don't believe the record supports that assertion. Can you elucidate on that? Yes, Your Honor. I believe the record supports that he only sold DVDs of movies that were not available on DVD, which means they were available on VHS. But that does not mean that the copyright on them had expired. Certainly under copyright law, the holder of the copyright is allowed to determine the media that their creative work is distributed on. What he was doing was taking works that were not available on DVD and creating a DVD market for them without authorization from the copyright holder. Thank you. Turning to the sentencing arguments that Mr. Gordon makes, as an initial matter, I would submit that both of these claims were waived. He did not make any argument to the district court, although that copyright registrations for every single movie were required in order to reach a loss calculation. This did not come up in his oral argument, but his refund argument was also not raised below, and there is no record evidence to support the volume of the refunds, which customers they went to, or whether the timing of those refunds could possibly meet the standard set forth in the sentencing guidelines, which is that the refund occur before discovery of the offense. And we would suggest that that's not possible here because a refund in response to a customer complaint necessarily informed him that the customer had discovered the mail fraud aspect of his scheme. I'd also like to emphasize that his argument regarding the copyright registrations conflates criminal copyright violations with the mail fraud violations here. There's no requirement to find loss on mail fraud to show that every single work was also a copyright violation. The indictment doesn't allege copyright violation with respect to the mail fraud. It alleges that the DVDs sent to customers were not of good quality, not authentic, and that his websites purported to show the customers that he was selling legitimate DVDs, which is not what they received. The jury instructions did not require the jury to find copyright infringement with respect to the mail fraud, and indeed the government did not argue that those had to involve mail fraud. What he did was convince customers that he was selling high-quality, legitimate DVDs, and that's not what they received. So it is not necessary for the government to submit copyright registrations. Even if it were the case that this sentencing occurred under the copyright guidelines as opposed to the mail fraud guidelines, and here they were grouped, and the sentencing was controlled by the mail fraud guidelines, this was relevant conduct, and we do not need copyright registrations from the Copyright Office for the court to find that these were all copyright violations. Mr. Gordon testified at trial that he investigated through the Copyright Office every single movie that he offered for sale and that every single one of them had a copyright registration, and it's very hard for him to get away from that now. Mr. Block, if I might, I realize that there are a number of hurdles that the defendant has to jump over, but maybe we can get to the ultimate one. Assume no waiver. Assume that this is a copyright violation case, not a mail fraud case, and assume that the defendant didn't testify regarding his knowledge of the copyright registration, all of those assumptions being high hurdles. But would it be the government's position at that point that if the issue was put into dispute, that the government can simply say, we're too busy, we don't have to run down the copyright violation at the time of sentencing? I don't think that the government has ever said that it was too busy. I'm not asking whether you've said it yet. What I'm really trying to get at is you make a charging decision. The defendant offered you plenty of room to do that, but as the guidelines matter, would it be possible, would it be the government's position that in a pure copyright case, you do not at sentencing have to prove the registration? And you can say we don't prove the registration because that's a demand on our resources we don't choose to undertake. I would say that we don't have to prove the registration with respect to additional copyright violations that were not charged in the indictment that the court may consider as relevant conduct in arriving at a loss amount, as long as the court relies on other reliable information to reach that conclusion. That's because the loss is going to be assimilated to the copyright violation itself? Because a copyright violation doesn't require a loss, does it? Yes, the copyright statute requires that a certain number of copyright infringements occur with a certain amount of loss within a certain period of time. Okay, and that meets a threshold. But I'm asking whether this question of loss inflects the ultimate determination for the guideline purposes. I think this statute and these guidelines are no different than any other criminal statute. Then why did you charge it as a mail fraud? We charged both a mail fraud and... No, why did you charge it as a mail fraud? Because Mr. Gordon didn't inform his customers that they would be receiving... Because there was a larger loss that you could obtain under those circumstances, right? No, I don't... As basis for the guidelines? Okay. Well, the sentencing guidelines might be higher, but in terms of the loss calculation is the same under both mail fraud and copyright infringement. Okay. Have I answered the court's question? You've answered mine, which I agree titrating pretty tightly on the record involved in this case. Yes, thank you, Your Honor. Unless there are other questions, the government would ask the court to affirm the conviction and sentence in this case. Thank you, counsel. That concludes argument in this case. Attorney Smith and Attorney Block should disconnect from the hearing at this time.